**UNITED STATES of America**

v.

**Edgar L. HAMILTON, Appellant.**

**No. 22361.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 19, 1969.

Decided July 24, 1969.

---

Mr. John A. Kennedy, Jr., Washington, D. C. (appointed by this court) for appellant.

Mr. John D. Aldock, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, and Miss Carol Garfiel, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT, LEVENTHAL, and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant was convicted of robbery [1] and assault with a dangerous weapon [2] growing out of the holdup of James R. Shanks, a D. C. Transit bus driver, in the early evening of November 9, 1967. The contention presented on appeal is that Shanks' in-court identification of appellant as the perpetrator of those offenses was fatally tainted by a pretrial photographic identification.[3] We disagree, and accordingly we affirm the conviction.

Shanks, alone in his lighted bus before turning around at the end of his route, saw a man, unknown to him, standing outside near the front door. Shanks opened the door and the man entered, asked Shanks to change a five dollar bill, and sat in a passenger seat. Shanks went to his chair for change, whereupon the man drew a pistol and demanded money. Shanks handed over his change carrier and a mint sack containing money and tokens. Just before leaving, the bandit reached into Shanks' pocket and extracted a one dollar bill.

On the next morning, Shanks went to a precinct stationhouse and was handed 15 photographs for examination. After scrutinizing five, he declared that "this is the man right there, positively," but was instructed "to look at the rest to make sure." Shanks did so and remained firm in his original selection, which was a photograph of appellant.

At the trial, Shanks gave a detailed description of the man who had robbed him and identified appellant as that man. Appellant did not object to the identification but, on cross-examination of Shanks, elicited testimony concerning Shanks' pretrial photographic identification in an obvious attempt to persuade the jury to discredit the in-court identification.[4] Having failed in that effort,[5]

---

1. D.C.Code § 22–2901 (1967 ed.), since amended (Supp. II 1969).

2. D.C.Code § 22–502 (1967 ed.). An eight-count indictment charged appellant with other offenses as well, but his motion to sever two of the counts was granted, and a trial of those two counts led to the conviction from which he appeals.

3. Appellant's subsidiary argument is discussed *infra* note 11.

4. Compare Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1237, 1248 (*en banc* 1968), cert. denied 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

5. For this reason, the Government submits that appellant is now precluded from attacking the in-court identification, but we

think that position is untenable. It was the Government, not appellant, that elicited the in-court identification for the jury. Appellant was free to combat the reliability of that identification by exploiting the potential of the photographic identification for mistake. See the cases cited *supra* note 4. That he might do without waiving any legal claim that the in-court identification was constitutionally improper. Compare Simmons v. United States, *supra* note 4, 390 U.S. at 389–394, 88 S.Ct. 967. It would have been the better part of wisdom to object to the in-court identification when the Government first prepared to put it in, but in the circumstances here we do not deem the failure to object to handicap our consideration of the point. In the determination of guilt or innocence, the in-court identification was a vital item on the scale. The record before us is sufficiently

appellant now asks us to hold that the latter identification was vitiated by the former.

Appellant does not argue for a right to representation by counsel at the time the photographs were shown to Shanks.[6] Instead, he urges that the procedure utilized to produce the identification then made was so conducive to mistake as to amount to a deprivation of due process.[7] Thus we must view "the totality of surrounding circumstances"[8] and determine whether "the photographic identification procedure [is] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."[9] We apply that standard here and conclude that the identification process under assault did not.

There is no claim that the circumstances, following so serious a breach of the law as occurred here, were not sufficiently exigent to justify an effort at photographic identification of the unknown guilty party. Nor are we persuaded that the circumstances surrounding Shanks' pictorial identification of appellant as that party generated more than a minimal risk of misidentification.[10] The uncontradicted evidence established conditions, existent when the robbery was perpetrated, that lent themselves to accurate identification of the robber. The bus was lighted, the robber was not masked, and he—and he alone—confronted Shanks at very close range over a period of three to four minutes. Shanks was able to furnish a detailed description of the robber's physical features and attire, and was positive in both his photographic and his trial identifications. "[T]his was my first hold-up," he explained from the witness stand, "I don't forget;" and, like Shanks, we think he had ample reason to remember.

Moreover, the examination of the photographs occurred freshly—as we have stated, on the morning after the robbery. There were, we repeat, 15 photographs in all, depicting males of various ages, and only one photograph of appellant was included in the group. Shanks examined five photographs before any identification was forthcoming, and after examination of the rest was firm in that identification, as he was to remain until the trial. There is nothing in the record to suggest that appellant's photograph was highlighted in any way, or that its selection was in any way prompted. These circumstances considered, we hold that Shanks' in-court identification did not impinge upon appellant's due process rights.[11]

full to enable us to proceed confidently to a decision on the merits. Compare Clemons v. United States, *supra* note 4, 133 U.S.App.D.C. at 45–46, 408 F.2d at 1248–1249; Williams v. United States, 133 U.S.App.D.C. 185, 409 F.2d 471 (1969); Hawkins v. United States, 137 U.S.App.D.C. ——, 420 F.2d 1306 (1969). With this much of the purpose of an objection at trial otherwise served and appellant's fate hanging so precariously on the in-court identification, we are impelled to deal with it. See Fed.R.Crim.P. 52(b).

6. Compare Simmons v. United States, *supra* note 4, 390 U.S. at 383, 88 S.Ct. 967. Counsel at an identification session designed to narrow the field of suspects, at a time when on one has been charged and there is no one in particular to represent, is an obvious impracticality.

7. See Simmons v. United States, *supra* note 4, 390 U.S. at 382–386, 88 S.Ct. 967. Compare Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

8. Simmons v. United States, *supra* note 4, 390 U.S. at 383, 88 S.Ct. 967.

9. Id. at 384, 88 S.Ct. at 971.

10. Compare Simmons v. United States, *supra* note 4, 390 U.S. at 382–386, 88 S.Ct. 967; Bryson v. United States, 136 U.S.App.D.C. at ——, 419 F.2d 695 at 700 (D.C.Cir. June 27, 1969). *Cf.* Mason v. United States, 134 U.S.App.D.C. 280, 414 F.2d 1176 at 1182 (D.C.Cir. June 30, 1969).

11. Appellant also contends for a rule requiring a confirmative identification pro-

We are mindful, nonetheless, of the hazards inherent in the use of photographs for purposes of identification, which appellant emphasizes, and of the consequent need for care whenever that process is employed. The opportunity for initial accurate observation is not always as good at it was here; where it is not, "[e]ven if the police subsequently follow the most correct photographic identification procedures and show [the witness] the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification."[12] Such a danger—always a matter of degree related to the circumstances—may be reduced by controls on the number and types of photographs used, the physical characteristics of the individuals depicted, and

the recurrence of the same photographed subject. But a danger of erroneous conviction lurks also in the possible inability of the accused to reconstruct the pictorial display—and consequently any unfairness in it—to which an identifying witness has been exposed.[13] In the District of Columbia, the police department has responded admirably to a somewhat comparable though less difficult problem by photographing all lineups, thus providing a visual record for future reference by counsel and courts alike. The provision of a similar safeguard through maintenance of a record of photographs shown to perspective identifying witnesses could be a healthy contribution to the administration of the criminal law.

Affirmed.

cedure, such as a lineup with counsel for the accused present, after a witness' initial photographic identification as a condition to admission of the witness' in-court identification. There is merit in the underlying suggestion for, as we recognize, a lineup is usually superior, in terms of the accuracy of an ensuing identification, to an examination of photographs. But in the present state of the law, confirmation of a photographic identification is not an imperative of due process; and, without committing ourselves irrevocably for the future, we are not convinced that at this stage of administrative as well as judicial experimentation for improved techniques for identification of criminals there is need for an exercise of our supervisory authority to command such a step. See Simmons v. United States, *supra* note 4, 390 U.S. at 382–386, 88 S.Ct. 967, where the unsuccessful effort to establish the invalidity per se of pretrial photographic identifications invoked both the due process mandate and the Supreme Court's supervisory power.

In any event, there is less of an imperative so far as a confirmatory lineup is concerned where, as here, the accused's arrest led to the seizure of extrinsic evi-

dence strongly pointing to guilt. Appellant and two other young men were arrested while sitting in a car. Under the driver's seat the police found a change carrier; under the passenger's seat the police found another change carrier and a United States mint money bag; and in appellant's pockets they found a roll of D.C. Transit tokens and at least two rolls of change. The bus driver witness testified that under the duress of a .45 caliber pistol pointed at him (a .38 caliber pistol on a .45 caliber carriage was also found under the driver's seat) he gave the robber his change carrier and a mint sack from his money box, each containing money and tokens. This extrinsic evidence of guilt is so strong as to have warranted affirmance even if there had been an error in admitting the identification testimony.

12. Simmons v. United States, *supra* note 4, 390 U.S. at 383, 88 S.Ct. at 971.

13. The problem here is similar to that obtaining when an accused is placed in a lineup without benefit of representation by counsel. See United States v. Wade, 388 U.S. 218, 229–232, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).