**STATE of Missouri, Respondent,**

**v.**

**Harold TRESSLER, Appellant.**

**No. 57401.**

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1973.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 10, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Allen I. Harris, Clayton, for defendant-appellant.

FINCH, Judge.

This is an appeal from a sentence of imprisonment for life following a jury verdict finding defendant guilty of murder in the first degree. We affirm.

Except for a contention by defendant that a conviction may not stand where based on the uncorroborated testimony of an accomplice, defendant does not attack the sufficiency of the evidence to sustain the conviction. Consequently, we need not recite all the evidence but limit ourselves to a statement of only such portions thereof as are necessary to an understanding of our decision.

On the night of June 22, 1970, Wesley Russey, a taxicab driver, was found shot to death in his cab in the City of St. Louis. Several months later, one Virginia Stevens wrote a letter to her mother telling her that she had participated with Harold Tressler in the killing of the taxicab driver and requested that her mother go to the police. She did that and as a result Virginia Stevens was arrested and taken into custody. She made a videotaped statement to the police. The police then arrested defendant.

At the trial, Virginia Stevens testified for the State. She stated that in June 1970, she had been living with defendant in an apartment in which another couple named Barbara Johnson and Butch also lived. On the night of June 22, 1970, she picked up Barbara at work and then the two of them, with Harold and Butch, went to a bar. They decided they were in need of some extra cash, and when they were unable to obtain a loan from other patrons, defendant told Virginia that he would obtain some money. The two of them, followed by Butch and Barbara in another automobile, drove to 14th Street near Cass Bank, where defendant made a telephone call. Shortly, a Checker cab driven by Wesley Russey arrived and defendant and Virginia entered the cab. They drove to 18th and North Market, where they stopped. Virginia testified that she got out of the car, but defendant drew a pistol and requested some money. Defendant then shot Russey. The two of them then went home with Butch and Barbara, stopping along the way to dispose of a watch and ring taken from Mr. Russey.

Defendant and Virginia continued to live together until the latter part of October 1970, at which time they separated. Very shortly, Virginia wrote the letter to her

mother which resulted in the arrests of Virginia and defendant.

Defendant's first assignment is that the trial court erred in refusing to sustain his motion to quash the indictment against him. That motion advanced the propositions that (1) the Missouri grand jury system deprives a defendant of his constitutional right of confrontation and his right to presence of counsel at a critical stage, namely, when the charge against him is presented to the grand jury for the purpose of securing an indictment, and (2) the grand jury which returned the indictment against defendant did not have presented to it competent and relevant evidence which would justify said indictment.

■ In support of the first of the foregoing contentions, defendant argues that since under Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), an accused person has a right to be represented at a preliminary hearing by counsel who can cross-examine and present witnesses, he should have the same rights when bound over for trial by action of a grand jury. His brief recognizes that "this would greatly upset the procedure in most states, and in the federal system," but argues that under the line of cases recognizing the right to counsel at all critical stages (he cites cases such as Miranda v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)), a grand jury's proceedings subsequent to arrest must be considered a critical stage of the proceedings against a defendant at which he is entitled to counsel. Therefore, says defendant, denial of counsel before the grand jury is violative of his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

Defendant's position is not supported by decisions of the federal courts. Directory Services, Inc. v. United States, 353 F.2d 299 (8th Cir. 1965); United States v. Scully, 225 F.2d 113 (2nd Cir. 1955); United States v. Levinson, 405 F.2d 971 (6th Cir. 1968); Perrone v. United States, 416 F.2d 464 (2nd Cir. 1969). Accordingly, we overrule the contention that absence of counsel before the grand jury violated his federally guaranteed constitutional rights and therefore entitled him to have the indictment quashed.

Defendant's second ground for asking that the indictment be quashed was that the grand jury did not have before it competent and relevant evidence which would justify the indictment. The motion to quash contained no details, but during oral argument before the trial court counsel explained this contention by saying: "Actually, the only two people who could in any way incriminate my client were Virginia Stevens and Barbara Johnson. Now I have information which I trust, and which I'm telling you now as an officer of this court, that I have had reliable information that those two people * * * did not appear before the grand jury * * *. They had statements from the officers * * * and they had or might've had that videotape film of the confession * * *, but they did not have admissible evidence, in that neither of those two parties personally appeared * * *."

Counsel argued that if the indictment was based on inadmissible hearsay, it would not stand. To support his motion to quash, defendant had a subpoena duces tecum issued for the minutes of the grand jury proceedings. On motion of the State, the court quashed the subpoena duces tecum. It then overruled defendant's motion to quash the indictment.

■ We hold that a grand jury may indict on hearsay evidence without violating due process. The Supreme Court of the United States has expressly so held in the case of United States v. Costello, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Costello was indicted for willful evasion of income taxes. He moved to inspect the minutes of the grand jury which returned the indictment, stating in his affidavit that

he was firmly convinced that there could have been no legal or competent evidence before the grand jury since he had reported all of his income and paid taxes thereon. The motion was denied. At trial it developed on cross-examination of the government's witnesses that the three investigating officers who testified before the grand jury had no first-hand knowledge of the accounting information as to which they testified. They had been the only witnesses against defendant before the grand jury and hence all the evidence against him for the purpose of securing an indictment was hearsay. After conviction, defendant again sought by motion to have the indictment dismissed as based solely on hearsay evidence, thereby allegedly violating the Fifth Amendment to the Constitution of the United States. The Supreme Court overruled this contention, holding that the Fifth Amendment does not prescribe the kind of evidence on which a grand jury must act, and observing that if one could attack indictments on the basis that all evidence before the grand jury was hearsay, much delay in the disposition of cases would result.

The case of State v. Pierson, 337 Mo. 475, 85 S.W.2d 48, 50 (1935), wherein defendant was convicted of first degree murder committed in the perpetration of arson, is in harmony with the Costello decision. In Pierson, the defendant sought to quash the indictment against him. In support of his motion, he sought to call grand jurors to testify that the only possible evidence the grand jury had that the fire was of incendiary origin consisted of the written statements of alleged co-conspirators who did not personally appear before the grand jury. In discussing that contention, this court said:

" ' * * * [T]he question is not as to the sufficiency of the evidence before the grand jurors, for of that they are the judges, but it is whether they had before them any evidence at all. If it were otherwise, it would result that the court would

become the tribunal to indict as well as the tribunal to try the case.' "

In the earlier case of State v. Randolph, 139 Mo.App. 314, 123 S.W. 61, 62 (1909), the court stated the rule as to the sufficiency of evidence required to indict as follows:

" * * * The rule is that an indictment returned without the hearing of any testimony may be quashed * * *. While an indictment cannot be returned without the hearing of some testimony, the grand jury are themselves the judge of how much testimony is required, and also as to whether the testimony which they hear is competent."

Defendant also cites several Missouri statutory provisions governing grand juries and asserts that they indicate a legislative intent that grand juries should indict only after hearing sufficient evidence to enable them to conclude that, based thereon, there is enough evidence to justify bringing a defendant to trial. We have analyzed these sections and we find nothing therein which would require a rule that a grand jury may not indict based on hearsay evidence.

We recognize that some states, referred to in defendant's brief, have held that an indictment based on hearsay is invalid, but the predominant view is otherwise. See Annotation: Grand Jury—Incompetent Hearsay—Effect, 37 A.L.R. 3rd 612, 616. We adhere to the rule that an indictment may be based on hearsay. The defendant has not contended that the grand jury was totally without evidence or that they viewed, heard and accepted illegal evidence. Accordingly, we hold that the trial court correctly overruled the motion to quash the indictment.

Another point raised by defendant is that the court erred in sustaining the state's motion to quash his subpoena duces tecum for the grand jury minutes. Admittedly, defendant sought these minutes in order to try to show that only hearsay evi-

dence against defendant was presented to the grand jury. In view of our conclusion that even if true, this would not have been a basis for quashing the indictment, it would serve no useful purpose to explore in depth the propriety of the court's action in quashing the subpoena duces tecum, and we decline to do so.

■ Defendant's next contention is that his conviction was based entirely upon the uncorroborated testimony of Virginia Stevens, a separately charged accomplice, whose testimony he characterized as being highly unreliable and not a proper basis on which his conviction should be permitted to stand. Defendant recognizes that Missouri has always adhered to the common law rule that a conviction may be based on the uncorroborated testimony of an accomplice, but urges that we should change the rule and adopt the view, accepted in some states, that evidence of an accomplice or codefendant must be corroborated to constitute a basis for a conviction.

In the recent case of State v. Morgan, 453 S.W.2d 932 (Mo.1970), this court dealt with a contention that the verdict could not stand because it was based on uncorroborated testimony of an accomplice which allegedly lacked probative force and did not amount to substantial evidence. In overruling that contention, the court quoted from State v. Powell, 433 S.W.2d 33, 34 (Mo.1968), as follows: "A conviction may be had on the uncorroborated evidence of an accomplice unless such testimony is so lacking in probative force as not to amount to substantial evidence."[1]

We are not persuaded that we should abandon the common law rule and we decline to do so. In our view, the evidence of Virginia Stevens was substantial evidence as defined in State v. Harris, 295 S.W.2d 94, 95 (Mo.1956), in that "it was not

inherently incredible, was not self-destructive, was not completely impeached by contradictory evidence, and was such that reasonable minds might believe it." Accordingly, it was sufficient to sustain a conviction.

■ The next point raised on appeal relates to the action of the trial court in overruling defendant's pre-trial motion which sought to have the State produce for viewing and inspection a videotaped statement given to the police by Virginia Stevens plus letters written by her. The motion stated that such inspection was necessary to enable defendant "to properly prepare his defense." In this connection, defendant's brief then states: "It is not known what was, in fact, within the video tape, but apparently it consisted of her rendition of the facts herein involved. The video tape might have been of unique use in the impeachment of this witness. To deny the defendant access to this, greatly prejudiced his ability to properly prepare for the case, and for this reason the court should reverse and remand."

In support of his right to production of these items for inspection, defendant cites Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), pointing out that said case places a duty on the State to disclose any information which it has which may be beneficial to defendant. However, there was no suggestion to the trial court and nothing in defendant's brief on appeal to show that the statement and letters sought contained information beneficial to the defendant so as to require their production under Brady v. Maryland. Hence, that case is not applicable.

It has been well settled in Missouri, up until our recent order adopting rules of discovery in criminal cases effective July 1, 1974, that there has been no general

---

1. Other cases holding that one may be convicted on uncorroborated evidence include State v. Stogsdill, 324 Mo. 105, 23 S.W.2d 22 (1929); State v. Shepard, 334 Mo. 423, 67 S.W.2d 91 (1933); State v. Brim, 339 S.W. 2d 775 (Mo.1960); State v. Gridley, 353 S.W.2d 705 (Mo.1962); State v. Morgan, 453 S.W.2d 932 (Mo.1970); State v. Strong, 484 S.W.2d 657 (Mo.1972).

right of discovery in criminal cases in Missouri. State v. Cannon, 465 S.W.2d 584 (Mo. banc 1971); State v. Aubuchon, 381 S.W.2d 807 (Mo.1964). Defendant's motion shows that this was an attempt to obtain pre-trial discovery to which he was not entitled as a matter of right under the Missouri decisions. Hence, the trial court did not err when it overruled the motion.

It should be noted that when Virginia Stevens took the stand and testified on behalf of the State, the defendant cross-examined her at great length and did various things to attempt to impeach her testimony, but he made no request whatsoever at that time to have the State produce the videotaped statement of Virginia Stevens for possible use for impeachment purposes. Hence, we are not presented with the question of whether production at that time for that purpose would have been required. Furthermore, the letter from Virginia Stevens to her mother, which is the other document which the pre-trial motion really sought, was marked as an exhibit and introduced in evidence at the trial.

The next issue raised concerns the action of the trial court in discharging one jury panel and then calling a new one from which a jury was selected.

■ On the first day of the trial the jury panel was interrogated on various matters, including the death penalty. After the voir dire had been concluded, both sides made their challenges. Since the jury was to be sequestered during the trial, those selected were not sworn as jurors on that first day but were allowed to return home and were to be sworn the following morning.

When they returned to court the next morning, one man who had been selected as a juror advised the court that he had become equivocal as to his feelings on capital punishment, and after interrogation he was excused. Since the rest of the panel had been returned to the central jury room the day before and could not be reassem-

bled, the court declared a mistrial, excused the remaining jurors, and sent for a new jury panel from which a jury subsequently was chosen.

Defendant's brief recognizes that inasmuch as the first jury was never sworn, no problem of double jeopardy is involved in this case. He maintains, however, that he had a right to be tried by the first jury and that it was error to discharge it and bring in a new one. He cites no cases and no constitutional or statutory provisions in support of his position. He does not claim that the second jury was prejudiced or unqualified. He simply asserts that he was entitled to be tried by the first jury, and since he was not, that the case should be reversed for that reason.

We find no merit in this contention. If the defendant were right and he was entitled to be tried by that first jury, it would not seem to improve his situation or remedy any asserted wrong to give him a trial before still another jury. No asserted error of any kind would be corrected thereby. He simply would get a new trial—another bite at the apple, and he is not entitled thereto on the basis asserted. We overrule this point.

■ Next, the defendant complains that the Circuit Attorney made various references to one Charles Turnbough, the landlord and employer of the defendant. It is defendant's contention that Turnbough's name had been much in the news in relation to various criminal activities and that reference to him prejudiced the defendant. The court sustained objections thereto when made by defendant but, even so, the defendant says that he should have a new trial. We disagree. The trial court has broad discretion in whether a new trial should be given in such circumstances. State v. Parks, 331 S.W.2d 547 (Mo.1960); State v. Humphrey, 462 S.W.2d 804 (Mo. 1971). We find nothing in the record to support a finding that the trial court abused that discretion. Incidentally, we also note in passing that on one occasion

defendant's counsel also referred to Turnbough as the employer of the defendant.

■ Next, defendant complains that in closing argument the State made reference to proffered testimony previously excluded. The record shows that when this occurred, the defendant objected to the argument, the Circuit Attorney then restructured his argument, and the court did not rule on the objection. Again, after examining the transcript, we find no reversible error in what occurred.

■ Finally, defendant asserts that the State was allowed to introduce incompetent rebuttal evidence consisting of a series of newspaper articles from the Globe-Democrat and Post-Dispatch which were read into the record by an investigator for the Circuit Attorney's office. In his motion for new trial, defendant asserts such evidence was irrelevant and hearsay and that the investigator was incompetent to testify with reference thereto.

The newspaper articles in question were merely short recitals of the fact that a taxi driver, Wesley Russey, had been found in his cab shot to death, apparently the victim of a holdup as his watch and billfold were missing. The articles related where his last pickup had been and the address where he was found. There was no mention of any persons as suspects. In view of the content of the articles, no prejudice to defendant could result therefrom and the reading of the articles to the jury was not reversible error.

■ Defendant complains also that the investigator who testified and read the articles in evidence was not a proper person to testify with reference thereto. The transcript shows that when the witness first was asked about the books which contained the newspaper articles, counsel for the defendant objected that the witness was not qualified to testify as to what was in the newspaper articles. What follows is not fully reported in that part of the discussion was off the record, but what appears in the transcript with reference to whether it was going to be necessary to bring somebody from the Globe-Democrat or Post-Dispatch to identify them as official records indicates to us that the attorney's real objection was not to the matter of identification. They were in bound volumes of the papers and counsel made some remark that they spoke for themselves. Defendant's real objection was to their relevance and that they were hearsay. Actually, it was not too important who read from the volumes. There was no real contention that they were not actually articles from the newspapers. Under these circumstances, we conclude that in any event this could not have been prejudicial error and it does not entitle the defendant to a new trial. Accordingly, we overrule this contention.

Judgment affirmed.

All of the Judges concur.