STATE óf Missouri, Plaintiff-Respondent,

v.

Donald Pete LETOURNEAU, Defendant-Appellant.

No. 9628.

Missouri Court of Appeals,
Springfield District.

Sept. 23, 1974.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 9, 1974.

Application to Transfer Denied
Dec. 16, 1974.

Michael Baker, Springfield, for defendant-appellant.

John C. Danforth, Atty. Gen., Donald R. Bird, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

BILLINGS, Judge.

Defendant Donald Pierre (Pete) Letourneau was tried and convicted of the armed robbery of a grocery clerk and the jury fixed his punishment at ten years in the penitentiary. We affirm.

■ Since the sufficiency of the evidence to support his conviction is one of defendant's averments for reversal, we first consider this contention. In so doing, we keep in mind that the facts and evidence and favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. State v. Sherrill, 496 S.W.2d 321, 323 (Mo.App.1973); State v. Strong, 484 S.W.2d 657 (Mo.1972). "[T]he scope of our review extends only to a determination of whether there is sufficient substantial evidence to support the verdict. It is not our function or prerogative to weigh the evidence to determine whether the charge has been proven beyond a reasonable doubt; that is a function of the jury. . . ." State v. Sherrill, supra, 496 S.W.2d at 323.

At approximately 7:15 p. m. on the evening of April 20, 1973, clerk Alice Nichols was on duty at Waddill's Market on Glenstone Avenue in Springfield. She was at the cash register, having just completed a transaction with two youthful customers. An unmasked man "run right up to the register," holding a gun in his hand. The man was "nervous" and was within two to three feet of the clerk and kept shaking the gun at her. She asked the man what he wanted, whereupon the robber took a paper bag from his pocket and "threw it at me and told me to roll it in and he said hurry." The clerk understood she was to remove the money from the cash register and place it in the paper bag. She did so. then the "nervous" bandit told the clerk to get the plastic bag [ostensibly containing more money] from beneath the counter but the clerk replied "there wasn't any there." Holding the paper bag containing the money from the register and continuing to point the gun at the clerk, the robber ordered the employee to head for the back room of the store. The clerk started toward the rear of the building with the man following her. Suddenly the robber turned and fled by way of the front door of the market. The clerk notified police of the holdup and gave the authorities a description of the robber and the clothing he was wearing.

The robber was in the clerk's presence for "a minute, minute and a half," he was within two or three feet of her, and she saw his face all during the robbery. She

was able to get a "good look" at his face. At defendant's trial the clerk positively and unequivocally identified the defendant as the robber.

Defendant argues that the foregoing evidence, coupled with defendant's alibi testimony by himself, his sister, and his best friend's wife, warranted a judgment of acquittal. We disagree. As noted, supra, we do not weigh the evidence. The weight of the evidence and the credibility of the witnesses are for the jury. State v. Sherrill, supra. Alleged inconsistencies in the clerk's testimony and defendant's alibi evidence were for resolution by the jury. The testimony of the victim of the robbery, if believed by the jury beyond a reasonable doubt, is sufficient to support defendant's conviction for the crime charged. State v. Allen, 485 S.W.2d 28, 32–33 (Mo. 1972).

■ Three of defendant's points in this appeal pertain to procedures concerning his identification as the robber. He contends the clerk's initial photographic identification of him was suggestive and thus constitutionally infirm; he was entitled to have counsel present when the clerk viewed the photographs; and, the failure of the authorities to compel the clerk to view him in a police lineup prior to his preliminary hearing further violated his constitutional rights. Defendant says that these errors tainted his in-court identification by clerk Nichols and the trial court improperly denied his pre-trial motion to suppress his in-court identification by the clerk. Defendant's claims "must be evaluated in light of the totality of surrounding circumstances." Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968).

Clerk Nichols described the person who robbed her as a man, wearing faded blue jeans, shirt and jacket. She estimated his height to be "five-nine, ten, something like that," weight 170 to 180 pounds, dark hair, and "I guessed him thirty or thirty-five." Sometime shortly after the crime Spring-

field officers had the clerk come to the police station where she viewed several photographs. She did not recognize any of the photographs as being that of the person who robbed her. There is no evidence that defendant's photograph was included in this first series of pictures.

On May 5, 1973, a police officer came to Waddill's Market with a second group of pictures for clerk Nichols to examine. The only thing the officer said to her was that he wanted her to look at the photographs. The eleven photographs, received as exhibits at the evidentiary hearing on defendant's suppression motion, are identical in size and photographic technique. They are what are commonly designated "mug" shots depicting front and side views of eleven different white males with police department identification by numbers and date beneath each view. All the photographs are black and white. "[H]e [the officer] had a handful, but I only looked at three or four" and "I thumbed through them real fast until I come to him [defendant]" and "I definitely identified him [defendant] immediately." The record is wholly barren of any evidence that the officer made any suggestion to the witness as to the identity of the defendant or gave any indication that defendant was involved in the robbery. In response to a question by the court the clerk stated she would have recognized the defendant even if she had never seen his photograph.

The constitutional rule concerning the use of photographs by police for the purpose of identifying a criminal suspect is found in Simmons v. United States, supra. There, as here, the-in-court identification of Simmons by eyewitnesses to a robbery was challenged by reason of pre-trial photographic identification of Simmons by the witnesses. In rejecting Simmons' claim that the identification procedure was so unduly prejudicial as fatally to taint his conviction Mr. Justice Harlan, writing for the majority, said (l. c. 383–384, 88 S.Ct. 971): "It must be recognized that improp-

er employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972–1973, 18 L.Ed.2d 1199, 1206, and with decisions of other courts on the question of identification by photograph." [1] (footnotes omitted)

Applying the *Simmons* standard to this case, we conclude defendant's contention regarding clerk Nichols' photographic identification of him must fail. As the facts indicate it is not suggested that it was unnecessary for the police to resort to photographic identification in this case. An armed robbery, a serious felony, had been committed and the victim of the crime was the only possible person who could identify the bandit so that the officers could arrest him for the offense. Although the period of time the robber was in her presence was brief, nevertheless, clerk Nichols was face-to-face with the holdup man and there is no evidence in the record to suggest that clerk Nichols saw defendant under poor conditions, the inferences being to the contrary. There was no indication by the officer to the clerk as to whom the authorities suspected. Defendant's photograph was one among several and there was nothing to emphasize his photograph or differentiate it from the ten others. The entire group of photographs was handed by the officer to the clerk with the request that she view them. In the process of "thumbing through them" she came to de-

---

1. In a separate concurring opinion affirming Simmons' conviction Mr. Justice Black took the position that Simmons' claim was "frivolous" and that the circumstances surrounding the witnesses' photographic identification of Simmons concerned the *weight* of the witnesses' testimony and "The weight of the evidence . . . is not a question for the Court but for the jury, and does not raise a due process issue. . . ." 390 U.S. at p. 395, 88 S.Ct. at p. 977.

fendant's photograph and "immediately identified" him as the individual who had robbed her at gunpoint.

At the trial clerk Nichols was positive as to defendant's being the man who robbed her. Defendant's counsel vigorously cross-examined her concerning her photographic identification of the defendant and her description of the holdup man to the authorities. As was said in State v. Walters, 457 S.W.2d 817 at p. 822 (Mo.1970): ". . . It was thus brought out to the jury any potential for error in the [identification] procedures used. . . . It is also clear that the in-court identification made by [victim] had a source independent of the lineup identification: her observance at the scene of appellant, and immediately following that a proper photographic identification of him. . . ." We hold that in the instant case the circumstances of the photographic identification are well within the boundaries of *Simmons* and that clerk Nichols' in-court identification of defendant had an independent source and was not tainted. State v. Burnham, 501 S.W.2d 521 (Mo.App.1973); State v. Carey, 486 S.W.2d 443 (Mo.1972).

■ We find no merit in defendant's averment that clerk Nichols should have been compelled to view the defendant in a police lineup prior to his preliminary hearing on the robbery charge. The record does not reflect any such motion and we are cited to no authority to support defendant's contention. True, from defendant's motion for new trial and counsel's argument in support thereof, we can surmise that such a motion was denied by the magistrate court but this does not alter the fact the record before us is devoid of such matter and we are at a loss to understand how a trial court can be convicted of an error it did not commit. Further, aside from the fact we are not advised by what authority a victim of a crime could be *compelled* to view a lineup, or the authorities to conduct a lineup, the defendant has not demonstrated in what manner he was prejudiced by the failure of the clerk to view and identify him in a lineup. We have held that the totality of the circumstances surrounding clerk Nichols' photographic identification was constitutionally firm and that her in-court identification of the defendant as the holdup man was founded on sound constitutional foundations.

We do not read the cases of United States v. Hamilton, 137 U.S.App.D.C. 89, 420 F.2d 1292 (1969), and People v. Holiday, 47 Ill.2d 300, 265 N.E.2d 634, 45 A.L. R.3d 948 (1970), as supportive of defendant's constitutional claim to have been viewed by the clerk in a lineup prior to his preliminary hearing. Photographic identification of the defendant was an issue in *Hamilton* and applying the totality of circumstances rule the court denied the defendant's claim of taint. In a footnote the court observed that defendant contended for a rule requiring a confirmative identification, such as a lineup with counsel present, after a witness' photographic identification, and while agreeing there was merit to such a proposal stated, "[I]n the present state of the law, confirmation of a photographic identification is not an imperative of due process . . . ." 420 F.2d at 1295, n. 11. In the *Holiday* case the defendant complained that his photographic identification was conducted in the absence of counsel and was unnecessarily suggestive and lacking in fairness. The court, in ruling that an evidentiary hearing was called for to develop the circumstances of the photographic showings, refused to extend the *Wade-Gilbert* doctrine [United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)] of right-to-counsel to photographic identification procedures where the defendant himself is not present. There is *dictum* in *Holiday* that "[P]hotographic identification procedures ought not to be employed when the suspect is in custody and a lineup is otherwise feasible. . . ." 265 N.E.2d at 637. We need not involve ourselves in judicial ex-

perimentation as to so-called improved techniques for identification of criminals and thus limit our ruling on this point by holding defendant's complaint of constitutional error to be without merit.·

■ Defendant's point concerning absence of counsel at the time of the photographic identification by clerk Nichols is fully answered by our Supreme Court in State v. Brookins, 468 S.W.2d 42, at p. 47 (Mo.1971): " . . . In this case the viewing of the photographs occurred before defendant was indicted or charged with the robbery . . . . The viewing of the photographs was not a 'critical stage' within the scope of either the Wade or Gilbert cases . . . and we decline to so extend it. . . . " [2] The Supreme Court of the United States likewise so declined in United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), where the Government conducted a *post*-indictment photographic display, including one of the in-custody defendant, shortly before trial for the purpose of allowing a witness to attempt an identification of the offender—in the absence of the accused's counsel.

■ Error is assigned in the court's denial of defendant's motion to inspect or copy statements made by clerk Nichols to the police either in statement form or in the police report of the robbery. Defendant's trial was on August 10, 1973, and defendant seeks to invoke criminal discovery rules which did not take effect until July 1, 1974. He argues any such statements by clerk Nichols might have provided more effective cross-examination of the robbery victim.

The issue presented is governed by such cases as State v. Tressler, 503 S.W.2d 13 (Mo.1973), State v. Franklin, 482 S.W.2d 420 (Mo.1972), and State v. Aubuchon, 381

S.W.2d 807 (Mo.1964). In general, prior to the adoption of the discovery rules in criminal cases, a criminal defendant had no general right of discovery. On "a satisfactory showing that a report or statement of a witness in the hands of the State is of such nature that *without it*, the defendant's trial would be fundamentally unfair, then it should be produced; otherwise not. And this decision rests, in the first instance, in the discretion of the trial court; we may later consider, if and when necessary, an abuse of that discretion. . . . " State v. Aubuchon, supra at 814.

The defendant has shown neither prejudice nor an abuse of discretion by the trial court. The latter personally examined the police report and concluded the clerk's statement to the investigating officers contained no impeaching information and did not disclose any facts which had not been developed by defendant's cross-examination of clerk Nichols. In order to insure our review of his ruling the trial judge designated the police report as the court's exhibit and it is before us. We find no abuse of discretion demonstrated. State v. Franklin, supra.

■ Defendant's next assignment of error concerns the failure of the trial court to give defendant's proffered instruction pertaining to the jury's receiving with care and caution the testimony of defendant's identification. Since the defendant strongly contested his identification by clerk Nichols and offered alibi testimony, he argues that the giving of the tendered instruction should have been mandatory. Tacitly recognizing the Missouri rule, defendant alternatively suggests the failure to so instruct the jury constitutes an abuse of discretion.

The giving of a cautionary instruction is discretionary with the trial court. State v.

2. United States v. Hamilton, supra, 420 F.2d at 1294, n. 6, observes: "Counsel at an identification session designed to narrow the field of suspects, at a time when no one has been charged and there is no one in particular to represent, is an obvious impracticality."

McDaniel, 392 S.W.2d 310 (Mo.1965). This judicial discretion involving the giving of a cautionary instruction concerning identification was most recently affirmed in State v. Collor, 502 S.W.2d 258 (Mo. 1973), and State v. Taylor, 472 S.W.2d 395 (Mo.1971). In the latter case the court was urged to change the existing rule. In answer to such proposal the court stated (472 S.W.2d at 402): "Counsel has cited thirty cases from other states and nine Federal cases, as supposedly supporting his argument. We have examined some of them, but are not persuaded that we should alter our rule. The trial court was not in error because (1) the giving of such a cautionary instruction [identity testimony is to be scrutinized with extreme care] was purely discretionary. . . ."

Abuse of discretion has been variously defined. A frequent definition is: "An abuse of discretion is an erroneous finding and judgment which is clearly contrary to the facts or the logical deductions from the facts and circumstances before the court— a judicial act which is untenable and clearly against reason and which works an injustice." State v. Stubenrouch, 499 S.W. 2d 824, 826 (Mo.App.1973).

■ Witness Nichols' identification of the defendant was positive, clear, and unequivocal. Defendant wore no mask and was in close physical proximity to the witness all during the time of the robbery and nothing prevented her from closely observing his features. Additionally, the usual instructions dealing with the presumption of innocence, requiring evidence beyond a reasonable doubt and with the determination of credibility of witnesses and assigning weight to the evidence were given by the court. These instructions, together with the cautionary language in the alibi instruction fairly protected the defendant's right not to be convicted by untrustworthy evidence. The giving of the proffered instruction was not mandatory and we do not find an abuse of discretion in the trial court's refusal to give the same.

This brings us to defendant's final two points. Since the claimed errors arose from the same incident they will be jointly considered. After the jury had been deliberating one and one-half hours they reported to the court they were deadlocked seven to five. In response to an inquiry by the trial judge as to whether further deliberation might result in a verdict, one juror replied: "I think not. I think not, now." The court then proceeded to give what is sometimes referred to as the "hammer" instruction and after further deliberation the jury returned its verdict finding defendant guilty and assessing his punishment.

Following the giving of the additional instruction, the defendant unsuccessfully sought a mistrial on the grounds of prejudice to the defendant and the coercive nature of the instruction.

■■ The declaration of a mistrial is a drastic remedy and should be exercised by a trial court only in extraordinary circumstances. State v. James, 347 S.W.2d 211 (Mo.1961). Defendant does not point to any such extraordinary circumstances and the contrary is evident in view of the fact that the jury did reach a verdict upon further deliberation of more than two hours. The criticized instruction has routinely been held not to be coercive or improper [State v. Morris, 484 S.W.2d 288 (Mo. 1972); State v. Barron, 465 S.W.2d 523, 49 A.L.R.3d 1176 (Mo.1971); State v. Jackson, 446 S.W.2d 627 (Mo.1969)] and is now an approved "pattern" instruction. MAI–CR 1.10. Defendant's points are denied.

The information is sufficient in form and substance. The verdict is in proper form and responsive to the information and issues submitted. Allocution[3] was

3. Profane and insulting remarks by the defendant to the conscientious trial judge resulted in defendant's being held in contempt of court. However, the trial judge did not punish defendant for his contemptuous outbursts.

granted and the sentence and judgment are proper and responsive to the verdict.

The judgment is affirmed.

HOGAN, C. J., and STONE, TITUS and FLANIGAN, JJ., concur.