UNITED STATES of America
v.
Clinton A. LONG, Appellant.
No. 23382.

United States Court of Appeals,
District of Columbia Circuit.

Feb. 2, 1970.

Mr. Melvin C. Garbow (appointed by this court) was on the motion for appellant.

Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and William S. Block, Asst. U. S. Attys., were on the opposition to the motion for appellee.

Before BAZELON, Chief Judge, and LEVENTHAL, Circuit Judge, in Chambers.

PER CURIAM:

 Appellant was tried before a jury and convicted of robbery by snatching a wallet containing $13.00 from complainant. He has been sentenced by the district court to a term of imprisonment of four-to-twelve years. Following the imposition of sentence appellant sought release under the provisions of the Bail Reform Act of 1966, 18 U.S.C. § 3148, pending appeal of the conviction. Appellant renews his motion for release in this court, having been denied this relief by the district court for reasons set forth in the court's written statement pursuant to Rule 9(b) of the Federal Rules of Appellate Procedure. We are impressed with the care and diligence with which counsel for appellant has observed the repeated mandate of this court for court-appointed counsel to design a conscientious plan of release conditions which would serve the purposes of the Bail Reform Act. However, the balance of factors to be considered in determining release pending appeal weighs too heavily against appellant and compels us to deny the motion.

The incident which led to appellant's arrest took place on a Saturday afternoon in late September of 1968. The government's evidence showed that the complainant, a boy of nineteen, was waiting to cross the street when he was approached by appellant who demanded fifty cents. Upon the complainant's refusal to comply, appellant purportedly snatched complainant's glasses from his face and threatened to break them. A witness to the incident urged appellant to return the glasses, and appellant did return them. But as complainant turned to cross the street appellant snatched his wallet from his back pocket and fled with the wallet's contents, some $13.00.

In assessing an appellant's bailability pending appeal, the Bail Reform Act of 1966 directs the court's attention to three basic considerations: whether the appellant presents a substantial risk of danger to any other person or to the community, or presents a substantial risk of flight to avoid incarceration, or whether the appeal is frivolous or taken for delay, 18 U.S.C. § 3148.

Counsel for appellant has expended the "maximum effort" contemplated by Banks v. United States, 134 U.S.App.D.C 254, 414 F.2d 1150 (1969), in order to develop adequate conditions to minimize these risks. Counsel suggests that appellant execute a $500 unsecured appearance bond. More important, appellant would reenroll as a drafting trainee at the Technical Institute of America under scholarship from the Department of Vocational Rehabilitation. Appellant had previously been enrolled in this program but discontinued his attendance. Continued enrollment and regular attendance would be mandatory conditions for appellant's release. Appellant's remain-

ing free time would largely be occupied by part-time employment, although no particular employment is specified. Appellant would be required to reside with his family, to remain in the Washington Metropolitan Area, and to surrender himself to custody when called upon to do so. Moreover, counsel approached both Offender Rehabilitation and Bonabond and finally secured the services of a former Air Force Officer, a member of the bar of this court, to supervise appellant while he is on release.

Counsel's efforts on behalf of his client and as an officer of this court are not only adequate, they have been prodigious. It is only after thorough consideration that we conclude that neither counsel's plan nor any set of conditions can minimize the risks of danger to an acceptable level. The district court found appellant to be a bully who used his size and muscle to rob a law abiding juvenile on the street. The incident occurred only 22 days after appellant had been placed on probation for one year following a conviction in the Court of General Sessions for carrying a dangerous weapon, a knife.

■ The district court's Rule 9(b) statement details at great length appellant's prior record of arrests and convictions. In the context of pretrial release, this court has observed that past crimes are material only if probative that bail or release conditions will not be observed. United States v. Alston, 136 U.S.App.D.C. 334, 420 F.2d 176 (August 20, 1969). Evidence of danger in prior convictions, of course, can be considered on bail pending appeal, but the court should demonstrate more selectivity than would appear from the mere recitation of a person's arrest record. *See* United States v. Forrest, 135 U.S.App.D.C. 350, 418 F.2d 1186 (September 11, 1969). Here the district court judge noted some 25 prior arrests. Most of these were for drunk and disorderly offenses, matters of slight importance to bail unless their circumstances are more fully explored. However, there were three crimes of some significance, an assault, an unlawful entry, and the previously noted carrying a dangerous weapon charge.

Of particularly grave consequence is the fact that appellant's pretrial release was revoked after appellant allegedly threatened one of the witnesses for the government. As a result of this threat appellant is currently under indictment for obstructing justice. When evidence of a threat is coupled with the fact that appellant lied to the Probation Office concerning a prior employment and was untruthful with his Probation Officer on several occasions while serving his one year probation, and that the instant crime was committed while appellant was on probation, we can only be left with the impression that appellant has little regard for conditions of supervised release laid down under the authority of the court.

The district court judge also found that appellant had not held employment for any substantial period of time while on probation or pretrial release, and that he was dropped from the drafting course he was attending because of poor attendance. Although these matters cannot be accepted as speaking directly to the issue of dangerousness, our conclusion from the findings is that appellant has made virtually no indication that he is ready to conduct himself responsibly. This is a tragic conclusion for us to reach since we are aware that an extended prison sentence will do little to encourage the development of what talents appellant may have in either drafting or other legitimate fields.

This observation raises another consideration, the issues presented on the merits of this appeal, which has given us even greater pause. The Bail Reform Act itself only admonishes that the issues should not be frivolous. 18 U.S.C. § 3148. Yet where compelling grounds for reversal are to be argued, this court has been especially reluctant to deny release pending appeal. Thus in *Banks* we observed that appellant presented a substantial claim of misidentification which, if sustained on appeal and

release had been denied, would mean that "he would have been unnecessarily incarcerated and separated from his family." 134 U.S.App.D.C. at 257, 414 F.2d at 1153.

Here appellant urges that the district court was in error in permitting an in-court identification of appellant by the complaining witness following deliberate post-*Wade* police misconduct in holding an unlawful jailhouse confrontation. Appellant contends that the confrontation irreparably tainted the complainant's subsequent recollection and refutes the trial court's finding that there was a reliable independent basis for the identification. We have not evaluated each of the arguments which appellant tenders. Yet, we must note the large burden which appellant must shoulder in overcoming the court's finding of an independent basis. See Long v. United States, —— U.S.App.D.C. ——, 424 F.2d 799 (December 18, 1969); Clemons v. United States, 133 U.S.App.D.C. 27, 34, 408 F.2d 1230, 1237 (1968).

Appellant also contests the fact that he was indicted for robbery "by force or violence" but convicted of robbery "by sudden snatching." Counsel rec-

ognizes, however, that in order to prevail on this point it would be necessary for the court to overrule its recent decision on this issue in Jackson v. United States, 123 U.S.App.D.C. 276, 359 F.2d 260, cert. denied, 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966).

■ Finally appellant contends that the imposition of a four-to-twelve years sentence for the crime of the sort here committed was an abuse of the trial judge's discretion. Although we are troubled by the severity of the sentence, we cannot predicate our bail order on that ground. Where release pending appeal is appropriate, carefully considered conditions may give an appellant a real opportunity to demonstrate to the district court marked improvement in his conduct, and ultimately supply the trial judge with good cause to reduce a sentence. See United States v. Forrest, 134 U.S.App.D.C. 1186, 418 F.2d 1186 (September 11, 1969). Appellant in *Banks*, for example, took full advantage of such an opportunity, and it ensued that Banks was released on bail pending appeal and further that he did not default when his conviction was affirmed.[1] Unfortunately, however, in this case the

---

1. Although Banks' conviction was ultimately affirmed on appeal, the advice to this court from the Offender Rehabilitation Division of the Legal Aid Agency, as third party custodian of Banks while on bail pending appeal, has sounded an encouraging note for the bail concept where care in the formulation of bail conditions is augmented by conscientious third party supervision and the strong resolve of the appellant himself.

Offender Rehabilitation's report to this court on Banks' case bears witness to this fact:

"It was stipulated in the release order that Mr. Banks live at Shaw residence, obtain employment and maintain regular contact with the Offender Rehabilitation Division. Mr. Banks remained at the Shaw Residence through September, 1969. While at Shaw he participated actively in counselling sessions, exhibited a mature and responsible attitude and observed all rules and regulations. In October, with the permission of the Honorable

George L. Hart, Mr. Banks left Shaw Residence to live with his wife and children in Mt. Rainier, Maryland. He fulfilled all his marital and parental responsibilities while at home and, additionally, made preparations for the future care of his family by opening a savings account and making regular deposits.

"Mr. Banks gained employment immediately with Ros-Mart Contracting Company, where he earned $3.00 per hour as a painter and minor repair man. According to his supervisor, he was a competent and reliable employee, interested in his trade and anxious to acquire new skills.

"On January 6, 1970, following the affirmation of his conviction * * * by the U. S. Court of Appeals, Mr. Banks surrendered himself to the custody of the U. S. Marshals to continue serving his sentence of 5–15 years.

"Throughout his seven months on bond pending appeal, Mr. Banks fulfilled all of his obligations to the Court, his family and his employer, and

risks of danger—according the trial court the deference which it is due in bail matters—are too great to provide that opportunity.

Motion denied.

in general, conducted himself in an exemplary manner befitting the con-

fidence placed in him by the Court of Appeals."