**UNITED STATES of America**

v.

**Robert L. SCRIBER, Appellant.**

No. 72–1841.

United States Court of Appeals, District of Columbia Circuit.

Argued April 19, 1973.

Decided May 16, 1974.

Rehearing Denied June 14, 1974.

Jerome J. Dick, Washington, D. C. (appointed by this Court), for appellant.

N. Richard Janis, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, WISDOM*, United States Circuit Judge for the Fifth Circuit, and WILKEY, Circuit Judge.

WILKEY, Circuit Judge:

Appellant and three others were indicted 25 May 1971 on three counts of armed robbery under 22 D.C.Code §§ 2901, 3202, three counts of robbery, 22 D.C.Code § 2901, four counts of assault with a dangerous weapon, 22 D.C.Code § 502, and two counts of assault on a person having charge of mail matter of the United States, 18 U.S.C. § 2114. Appellant was tried alone in United States District Court on 27–28 April 1972. The jury returned guilty verdicts against appellant on all counts except robbery.[1] The court sentenced appellant

---

* Sitting by designation pursuant to Title 28, U.S.C. § 291(a).

1. The trial judge instructed the jury not to return a verdict on the robbery counts if they found appellant guilty of armed robbery. Transcript (28 April) at 94.

to a term of ten years to life on the armed robbery count, with a concurrent term of three to ten years on the assault with a dangerous weapon count. Other counts were dismissed.

At a pretrial hearing on defense motions to suppress, the court ruled that the Government would not be allowed to introduce at trial earlier lineup identifications of appellant by five eyewitnesses. However, the court held that despite the impermissibly suggestive nature of the lineups, the five witnesses could identify appellant at trial because their in-court identifications would be based on an independent source.[2] Appellant contends that he was denied due process of law by the court's refusal to suppress the eyewitnesses' in-court identifications.

He further argues that the trial court erred when it failed to impose sanctions on the Government for the loss of certain evidence that might have been useful in appellant's defense. The lost evidence included police notes of eyewitness descriptions taken on the day of the crime and an array of photographs from which three of the eyewitnesses identified appellant prior to trial.

We find that the trial court did not err in allowing the five eyewitnesses to identify appellant in court and in not imposing sanctions for the failure to preserve evidence. We therefore affirm appellant's conviction for armed robbery. However, we must vacate his conviction for the lesser-included offense of assault with a dangerous weapon.

## I. *Factual Background*

On 20 January 1971 four men entered the Cleveland Park Branch of the United States Post Office. Three of the men proceeded to the area behind the service counters where the postal clerks and managerial personnel were working. While the man who remained in the lobby held the employees there at gunpoint, one of the other three pointed a gun at the supervisor, Mr. Myrick, and instructed him to "cool it." The other two men, one of whom was subsequently identified as appellant, rifled the drawers behind the counter and removed approximately $800 in United States Post Office money. The man identified as appellant later accompanied Myrick to the Post Office safes and stood by as Myrick opened two of them. Neither safe yielded any further cash. After spending five to seven minutes in the building, the perpetrators of the robbery fled.

Later on the day of 20 January Detective Sergeant Noone of the Metropolitan Police Robbery Squad interviewed the eyewitnesses and made written notes as they described the robbers. On 1 February he returned to the Cleveland Park Station and displayed several black-and-white photographs[3] to Myrick and two other employees, Mr. McGriff and Mr. Baylor. Each witness, outside the presence of the other two, selected appellant's photograph from the array. Appellant was arrested on 3 February. On 4 and 11 February Myrick, Baylor, McGriff, and two other postal employees who witnessed the robbery, Mr. Johnson and Mrs. Taylor, identified appellant at police lineups.

At the pretrial suppression hearing, held the same day as the trial commenced, the five eyewitnesses who had identified appellant testified, as did Detective Sergeant Noone. The eyewitnesses were questioned by government and defense counsel[4] concerning their lineup identifications, and McGriff, Baylor, and Myrick testified about their selection of appellant from the photographic array. In addition, the five eyewitnesses briefly outlined their recollections of the robbery, testified about how they had described the robbers to the police, and identified appellant in the courtroom.

---

2. Transcript (27 April) at 88, 106.

3. Mr. McGriff put the number at "seven or eight," Transcript (27 April) at 13; Detective Sergeant Noone stated that there were eight, *id.* at 33–34; Mr. Myrick recalled "eight or nine," *id.* at 58; Mr. Baylor testified that there were "at least six," *id.* at 67.

4. McGriff was called as a government witness and cross-examined by the defense. The other four eyewitnesses and Detective Sergeant Noone were called by the defense.

The Detective Sergeant gave his account of the photographic identification procedure and reported the disappearance of the "court-work jacket" in which the photographs, on-scene statements of witnesses, and his investigatory notes had been stored.[5] After examining photographs of the two police lineups in which appellant had appeared,[6] the court ruled that the lineups were unduly suggestive and could not be used at trial to corroborate the eyewitnesses' identification of appellant.[7] The prosecution indicated that it did not intend to put before the jury the photographic identification of appellant by the three employees.[8] Finally, the court ruled that the five eyewitnesses would be permitted to identify appellant in court on the basis of their independent source.[9]

At trial McGriff, Myrick, Baylor, Johnson, and Taylor appeared as prosecution witnesses and identified appellant as one of the robbers. In addition, two other Post Office employees testified to the fact of the robbery. The defense presented no evidence. The court submitted the case on instructions to the jury, which returned guilty verdicts as described above.

## II. Independent Source for the In-Court Identifications

██ The trial judge's ruling that the five eyewitnesses could identify appellant in court was proper if "the Government . . . establish[ed] by clear and convincing evidence that the in-court identifications were based upon observations other than the lineup identification."[10] The finding by the trial court that the eyewitnesses' in-court identifications were based on an independent source is entitled to great deference on appeal,[11] particularly since the trial court had the opportunity to observe the demeanor of the witnesses and thereby assess their credibility and reliability.[12] Upon examination of the record,[13] we

---

5. Transcript (27 April) at 35–38.

6. During the hearing, the lineup photographs were displayed to the five eyewitnesses. Appellant argues that this procedure reinforced the suggestive impact of the lineups themselves and further tainted the in-court identifications by the eyewitnesses. While appellant's assertion of taint may have some merit, we cannot permit him to raise it as a ground for appeal since appellant's trial counsel failed to object when the prosecution displayed the photos to McGriff and was himself responsible for demonstrating them to Johnson, Baylor, Myrick, and Taylor. Id. at 15, 51–52, 60–62, 70–72, 77–79.

7. Id. at 88, 105.

8. Id. at 81.

9. Id. at 106.

10. United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The Wade test was formulated in the context of a lineup that violated the defendant's right to counsel, not one held unduly suggestive. In the case at bar, appellant's counsel was present at the lineups and objected to the manner in which they were conducted. Transcript (27 April) at 85. The basis of the court's exclusion of lineup evidence at trial was that appellant "stood out" in the array presented. Id. at 105. However, in Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) (en banc), this court specified that the Wade "independent source" test applies whenever a lineup is found defective on either right-to-counsel or due process grounds. 133 U.S.App.D.C. at 34, 408 F.2d at 1237.

11. United States v. Hinkle, 145 U.S.App.D.C. 234, 236, 448 F.2d 1157, 1159 (1971) ; United States v. Long, 137 U.S.App.D.C. 275, 278, 422 F.2d 712, 715 (1970) ; Clemons v. United States, 133 U.S.App.D.C. 27, 38–39, 408 F. 2d 1230, 1241–1242 (1968). Independent source findings are overturned on appeal very infrequently. United States v. Johnson, 147 U.S.App.D.C. 31, 38, 452 F.2d 1363, 1370 (1971) ; United States v. Gambrill, 146 U.S. App.D.C. 72, 81, 449 F.2d 1148, 1157 (1971).

12. United States v. Gambrill, 146 U.S.App. D.C. 72, 80–81, 449 F.2d 1148, 1156–1157 (1971) ; Long v. United States, 137 U.S.App. D.C. 311, 316, 424 F.2d 799, 804 (1969) ; Clemons v. United States, 133 U.S.App.D.C. 27, 38–39, 408 F.2d 1230, 1241–1242 (1968).

13. Even if the trial court fails to articulate clearly its basis for finding an independent source, the appellate court can uphold the lower court on the basis of its own scrutiny of the record. United States v. Johnson, 147 U.S. App.D.C. 31, 38 n. 25, 452 F.2d 1363, 1370 n. 25 (1971) ; United States v. Kemper, 140 U.S.App.D.C. 47, 50 n. 24, 433 F.2d 1153, 1156 n. 24 (1970) ; Hawkins v. United States, 137 U.S.App.D.C. 103, 104, 420 F.2d 1306, 1307 (1969). Here, the trial court based its finding of independent source on the "independent observation" of the eyewitnesses,

can find no basis for overturning the trial court's ruling.

The record reveals that the five eyewitnesses who identified appellant at trial had excellent opportunities to observe him during the course of the robbery. Appellant wore no mask to obscure his features.[14] The Post Office was illuminated by flourescent lighting, which was described as "very good."[15] Behind the counters, in the area where appellant was operating during most of the robbery, there were no screens or barriers to obstruct the employees' views.[16] Appellant was in the building for a period of from five to seven minutes.[17] When Myrick led appellant to the Post Office safes, he spent approximately three minutes either "side-by-side" or "eyeball to eyeball" with appellant.[18] Appellant rifled Mrs. Taylor's cash drawer while she stood "right beside" him,[19] and he warned her that "if [she] continued to look at him he would shoot [her]."[20] McGriff testified that

appellant was in his presence for three or four minutes during the robbery[21] and that he got a good look at appellant's face from a distance of about ten feet.[22] Baylor had an unobstructed view of appellant from about fifteen feet away.[23] Johnson remembered appellant as one of the men who "came over the counter and was taking the money from the cash drawers"[24] and testified that his opportunity to view appellant lasted three or four minutes.[25] The excellent opportunities that the five identification witnesses had to observe appellant during the robbery were clearly sufficient to provide a solid basis for identification despite any later taint created by the suggestive pretrial lineups.[26]

United States v. Wade[27] listed several other factors bearing on whether an in-court identification is fatally tainted by a prior unlawful lineup. These factors,[28] and their application to the case at bar, are as follows:

(1) "the existence of any discrepancy between any pre-lineup description

Transcript (27 April) at 88, and thus apparently relied on the witnesses' opportunity to observe at the time of the crime. The court made its reasoning more explicit with respect to McGriff, whose testimony, the court stated, was based on "independent observation, after having been face-to-face with the man for four or five minutes." *Id.* at 87.

14. *Id.* at 12, 117. Appellant apparently was wearing a pair of sunglasses. *Id.* at 12.

15. *Id.* at 10, 117, 142–143; Transcript (28 April) at 10–11.

16. Transcript (28 April) at 19, 31.

17. Transcript (27 April) at 121, 147; Transcript (28 April) at 12–13, 22, 37.

18. Transcript (27 April) at 63, 117.

19. *Id.* at 80; Transcript (28 April) at 8–10.

20. Transcript (28 April) at 8.

21. Transcript (27 April) at 11.

22. Transcript (28 April) at 20–21.

23. *Id.* at 30–31.

24. *Id.* at 36.

25. Transcript (27 April) at 54.

26. *See* United States v. Lee, 148 U.S.App.D.C. 341, 459 F.2d 1365 (1972); United States v. Butler, 147 U.S.App.D.C. 270, 455 F.2d 1338 (1971); United States v. Harris, 141 U.S. App.D.C. 253, 437 F.2d 686 (1970); United

States v. Green, 141 U.S.App.D.C. 136, 436 F.2d 290 (1970).

Our dissenting colleague points to the witness McGriff's statement as to the basis for his identification, "It was based on what I saw during the robbery and based on the photos that I have seen of him since then," and concludes, "The question . . . is . . . whether it was established by clear and convincing evidence that [the eyewitnesses'] trial identifications were in fact independent of such influences [the tainted lineups and the missing photographs]. We know from his own statement that it was not in the case of Mr. McGriff . . . ." Dissenting opinion p. 1049. We think what Mr. McGriff said is only what any analytical and completely truthful witness would say. As has been pointed out before, "[T]he viewing of *any* photograph of the accused at *any* time is likely to add an immeasurable quantum to the certainty of a witness' identification, but these trace residuals the Supreme Court seemed willing to accept as not 'impermissibly suggestive.'" United States v. Ash, 149 U.S.App.D.C. 1, 16, 461 F.2d 92, 107 (1972) (en banc) (Wilkey, Tamm, Robb, MacKinnon, dissenting), rev'd, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) (emphasis original).

27. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

28. 388 U.S. at 241.

and the defendant's actual description"; (Here, the witnesses apparently described appellant fairly accurately to police on the day of the robbery. The descriptions varied slightly in details, but they generally depicted appellant as around 5'-11" or taller, tan- or brown-skinned, and slim in build.)[29]

(2) "any identification prior to lineup of another person"; (None of the witnesses made such an identification in the case at bar.)

(3) "the identification by picture of the defendant prior to the lineup"; (Three of the witnesses did make pre-lineup photographic identifications of appellant. The impact of those identifications here is discussed in Part III *infra*.)

(4) "failure to identify the defendant on a prior occasion"; (No such failure occurred here.)

(5) "the lapse of time between the alleged act and the lineup identification." (The lineups were held on 4 and 11 February 1971, 14 and 21 days, respectively, after the robbery. During the lapse between the crime and the first lineup, it is unlikely that the witnesses' recollections of appellant's description became so dim that the suggestive lineups overcame those recollections.)

Thus, the possibility that the eyewitnesses' in-court identifications of appellant were tainted by the lineup identifications seems slight when the *Wade* criteria are applied.

In light of the foregoing, we can only conclude that appellant was not deprived of due process by the trial court's ruling that the five eyewitnesses could identify appellant at trial.

### III. *The Pre-Lineup Photographic Identifications*

Appellant contends that the pre-lineup photographic identifications of appellant by Myrick, McGriff, and Baylor fatally tainted the in-court identifications by those witnesses. Appellant does not directly challenge the procedures employed by the police when the photographic identifications were procured, but argues that: (A) the identifications must be presumed suggestive since the Government was unable to produce the photographic array at trial; (B) although the Government did not use the photographic identifications as evidence at trial, its failure to preserve the photographs deprived appellant of a fair trial by denying him the opportunity to use the possibly suggestive photographs in cross-examining McGriff, Myrick, and Baylor; and (C) the Government's failure to produce the photographs should have resulted in the imposition of sanctions under this court's decision in United States v. Bryant.[30] We reject these contentions.

### A.

Appellant's first two contentions are almost directly controlled by the Supreme Court's decision in Simmons v. United States.[31] The procedures and circumstances of the photographic identifications in *Simmons* were virtually identical to those in the case at bar. As in this case, the photographs were displayed to the witnesses prior to the defendant's arrest, so the photographic identification was a phase of the authorities' search for suspects and not simply a device for procuring evidence against existing suspects. The bank robbery in *Simmons* took place in the afternoon, and the lighting in the bank was good. The same circumstances existed during the robbery committed by appellant and his cohorts. The robbers in *Simmons,* as in this case, wore no masks. Five bank employees viewed Simmons for periods ranging up to five minutes. In this case, five employees had good opportunities to view appellant during his five to seven minutes in the bank. All five employees were shown photographs of Simmons the day after the robbery "while their memories

---

29. Transcript (27 April) at 20, 44, 57, 62, 75.

30. 142 U.S.App.D.C. 132, 439 F.2d 642 (1971).

31. 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

were still fresh." [32] Here, three of the eyewitnesses viewed photographs just eleven days after the robbery occurred.[33] In *Simmons,* six photographs were displayed to each witness outside the presence of the others. Here, each witness individually inspected *at least* six photographs.[34] In both *Simmons* and this case, there was no indication that the authorities who conducted the photographic identifications made any suggestive comments to the identifying witnesses. The only significant difference between *Simmons* and the case at bar is in the nature of the photographs displayed: in *Simmons,* group photos in which Simmons appeared several times; in this case, individual photos among which was a single picture of appellant. It is difficult, however, to perceive why this difference should compel any different outcome in the present case.

■ In *Simmons,* the Court applied the following test to the facts described above:

> [C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302 [, 87 S. Ct. 1967, 18 L.Ed.2d 1199] . . . .[35]

Under this test, the Court held that "in the factual surroundings of this case the identification procedure used was not such as to deny Simmons due process of law . . . ." [36] The same conclusion is unavoidable on the facts of this case.

### B.

■ It is significant that in *Simmons,* as in this case, the Government was unable to make the photographic array displayed to identifying witnesses available at trial. The Court assessed this circumstance as follows:

> Although the pictures might have been of some assistance to the defense, and although it doubtless would have been preferable for the Government to have labeled the pictures shown to each witness and kept them available for trial, we hold that in the circumstances the refusal of the District Court to order their production did not amount to an abuse of discretion . . . . The defense surely knew that photographs had played a role in the identification process. Yet there was no attempt to have the pictures produced prior to trial pursuant to Fed.Rule Crim.Proc. 16. When production of the pictures was sought at trial, the defense did not explain why they were needed, but simply argued that production was required under § 3500. Moreover, the strength of the eyewitness identifications of Simmons renders it highly unlikely that nonproduction of the photographs caused him any prejudice.[37]

This analysis applies with even greater force to the present case, in which defense counsel failed to make a motion for discovery of the photographs at *any* stage of the prosecution.

### C.

■ Finally, we must reject appellant's contention that the trial court erred by not enforcing the rule of United States v. Bryant [38] against the Government for its failure to preserve the photo-

32. 390 U.S. at 385.

33. The other two eyewitnesses identified appellant at trial without making pretrial photographic identifications. Consequently, there is no possibility that their in-court identifications were tainted by anything other than the pretrial lineups, with which we have dealt in Part II *supra.*

34. *See* note 3 *supra.*

35. 390 U.S. at 384.

36. 390 U.S. at 386.

37. 390 U.S. at 388–389 (footnotes omitted).

38. 142 U.S.App.D.C. 132, 142, 439 F.2d 642, 652 (1971). We developed further the *Bryant* rule in United States v. Perry, 153 U.S.App. D.C. 89, 471 F.2d 1057 (1972).

graphic array. We emphasize that appellant did not move for production of the photographs in the proceedings below or request that *Bryant* sanctions be imposed on the Government for its loss of the evidence. We can reverse the judgment on a ground not asserted below only upon a finding of " 'plain errors or defects affecting substantial rights.' "[39] We cannot make such a finding on the record of this case. Indeed, there is some evidence that the District of Columbia Police Department, heeding *Bryant* and this court's further admonition in United States v. Hamilton,[40] has made "earnest efforts" to preserve photographic arrays that have been displayed to potential identifying witnesses. Detective Sergeant Noone testified at the pretrial suppression hearing that he "usually keep[s] all these photographs in a court-work jacket in the Robbery Squad Office."[41] Moreover, in United States v. Clemons we took note of "recent commendable police regulations"[42] that provide for "rigorous and systematic procedures designed to preserve"[43] photographic identification evidence for trial.[44] We need not decide, however, whether this evidence is sufficient to sustain the Government's burden of proof under *Bryant* and United States v. Perry,[45] since the appellant failed to activate the Government's burden by moving for discovery or *Bryant* sanctions.

■ The lost court-work jacket also contained Detective Sergeant Noone's notes recording the eyewitnesses' descriptions of the robbers on the day of the crime. Appellant asserts that these notes might have been helpful to him in cross-examining the identification witnesses at trial. Therefore, he contends, the Government's loss of the notes should have resulted in the imposition of sanctions under *Bryant* or the Jencks Act.[46] First, it has been held that rough, investigative notes taken by police officers at the scene of a crime are not "substantially verbatim" statements within the coverage of the Jencks Act.[47] Moreover, we note again that the appellant failed properly to raise any *Bryant* or Jencks Act issues by moving for discovery or sanctions in the trial court. In the absence of plain error in the record, we decline to tamper with the judgment below.

## IV. Conclusion

■ For the reasons stated herein, we affirm appellant's conviction for armed robbery. However, we vacate appellant's conviction for assault with a dangerous weapon, which we have held a lesser-included offense of the crime of armed robbery.[48]

Affirmed as modified.

FAHY, Senior Circuit Judge, dissenting:

The District Court held that the in-court identifications of appellant as

---

39. United States v. Lewis, 140 U.S.App.D.C. 40, 46, 433 F.2d 1146, 1152 (1972).

40. 137 U.S.App.D.C. 89, 420 F.2d 1292 (1969).

41. Transcript (27 April) at 36. Noone offered no explanation for the disappearance of the court-work jacket, but none was sought by the parties or the court since the issue was not raised by any defense motion.

42. 144 U.S.App.D.C. 235, 238, 445 F.2d 711, 714 (1971).

43. United States v. Bryant, 142 U.S.App.D.C. 132, 142, 439 F.2d 642, 652 (1971).

44. The regulations were incorporated in Metropolitan Police Department Memorandum Order No. 16, § II(2) (15 May 1970), which provides:

> Adequate records of the photographs shown to each witness must be kept so that the exact group of photographs from which an

identification was made can be presented in court at a later date to counter any claim of undue suggestion and enhance the reliability of the in-court identification. This information shall be recorded in the statement of facts of the case.

United States v. Clemons, 144 U.S.App.D.C. 235, 238 n. 7, 445 F.2d 711, 714 n. 7 (1971).

45. Note 38, *supra*.

46. 18 U.S.C. § 3500 (1970).

47. United States v. Augenblick, 393 U.S. 348, 354–355, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); United States v. Hines, 147 U.S.App.D.C. 249, 263–264, 455 F.2d 1317, 1331–1332 (1971).

48. United States v. Wimbush, 154 U.S.App. D.C. 236, 475 F.2d 347 (1973). As in *Wimbush* and cases cited therein, we find no necessity for a remand for resentencing on the greater offense when the sentences are concurrent.

one of the robbers by five eyewitnesses were admissible as based in each instance on a source independent of previous identifications of appellant by these witnesses at two lineups which the court had found tainted,[1] and, also, as to three of the witnesses, independent of photographs of appellant they had viewed but which were missing from the police files and were not available for inspection by the court. This court affirms, although none of the five identifying witnesses ascribed their identification at trial to a source independent of the suggestive lineups or missing photographs. I respectfully dissent.

At the conclusion of a pretrial suppression hearing at which the lineup identifications were considered the District Court's ruling appears from the following exchange:

> [The Assistant United States Attorney]: . . . now that the Court has suppressed the lineup, I wonder if the Court would make a specific finding that the record that we have before us has shown, by clear and convincing evidence, independent source?
>
> The Court: I believe that is so, and I will make such a finding.
>
> \*   \*   \*   \*   \*   \*
>
> I have no question with the independent source of any of those witnesses.

Defense counsel duly objected. There has been no testimony at any time by any of the witnesses that their identifications were or would be at trial based upon a source independent of the lineups which offended due process. One of the five witnesses, Mr. McGriff,[2] was asked at the suppression hearing the basis for his identification. He replied: "It was based on what I saw during the robbery and based on the photos that I have seen of him since then." Neither the District Court nor counsel similarly questioned the other witnesses.

As held in United States v. Sanders, 156 U.S.App.D.C. 210, 479 F.2d 1193 (1973), following United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967), and see Gilbert v. California, 388 U.S. 263, 272–273, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the identifying evidence at trial would be admissible only upon clear and convincing evidence adduced by the Government that it would rest upon a source independent of the pretrial tainted identifications. To this effect, in addition to United States v. Sanders, *supra*, are our cases of United States v. Ash, 149 U.S.App.D.C. 1, 461 F.2d 92, 105–106 (1972) (en banc), rev'd on other grounds, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); Mason v. United States, 134 U.S. App.D.C. 280, 414 F.2d 1176, 1182 (1969); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) (en banc). Cf. Foster v. California, 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). The court now departs from this previously established framework within which this case falls.

The question before this court is not whether the witnesses could have identified appellant independently of the tainted lineups and, as to three witnesses, the missing photographs, but whether it was established by clear and convincing evidence that their trial identifications were in fact independent of such influences. We know from his own statement that it was not in the case of Mr. McGriff, and we have no testimony one way or another from the other four witnesses. The five witnesses testified at the trial upon the background of their recollections of the robbery, their subsequent view of the tainted lineups, and, as to three of the witnesses, their viewings of the missing photographs, and we have no evidence, much less clear and convincing evidence, that these identifications were not based on this mingling of both tainted and untainted observations of appel-

---

1. There were two lineups. As to one the court specifically ruled he would "eliminate it for identification." As to an earlier one, there is some confusion, but for our purposes it is resolved by a stipulation of counsel on the appeal that the photographs of both lineups were suppressed.

2. At one of the lineups he had identified the "wrong suspect."

lant. At no time was there any inquiry as to the possible effect of the tainted lineups or missing photographs except in the case of Mr. McGriff.[3]

After the District Court suppressed the lineup identifications as illegal and tainted it was within the court's competence to decide that the taint was not so heavy as to preclude trial identifications stemming in each instance from a source independent of the taint, and the missing photographs in the case of three of the witnesses; but I think it was not within the court's competence to rule on the record of the suppression hearing that the trial identifications would in fact stem from such a source independent of these influences.

The majority opinion considers the several factors enumerated in *Wade* which bear upon whether an in-court identification is fatally tainted by a prior unlawful lineup, and states that here the possibility that the eyewitnesses' in-court identifications were tainted seems slight. Under *Wade,* however, the taint in the present case stemming from the suppressed lineups persisted unless it were established by clear and convincing evidence that it would not affect the prospective trial testimony of the witnesses. The taint was deep enough to require suppression of the lineup identifications as a violation of due process. To state on the appeal that the possibility of tainted in-court identifications seems slight does not comply with the rule of proof by clear and convincing evidence of an independent source. Moreover, the court omits reference to the missing photographs which had also been shown to three of the witnesses.

It is altogether possible that the eyewitnesses, excluding Mr. McGriff, might have been able to identify appellant solely by what they remembered of the robbery, eliminating from their minds the subsequently tainted source and the use of the missing photographs, but their ability to do so was not developed. Therefore, we must assume that their identifications at trial were a conglomeration of all that had gone before. Even in cases where the witnesses have explicitly testified that the in-court identification is independent of intervening tainted identification procedures this court has refused to allow the in-court identification to stand because the showing was not clear and convincing. United States v. Gambrill, 146 U.S.App.D.C. 72, 449 F.2d 1148 (1971); United States v. Johnson, 147 U.S.App.D.C. 31, 452 F.2d 1363 (1971).[4]

3. Were he the only one of the five who was affected by the taint, the harmless error rule might have been successfully invoked. Chapman v. California, 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

4. The court adverts in footnote 26 to my reference to Mr. McGriff's testimony that his identification was based on photographs seen since the robbery as well as on what he saw during the robbery. The advertence of the court is that an "immeasurable quantum" is likely to be added to the certainty of a witness' identification by any viewing of any photograph at any time, but "these trace residuals the Supreme Court seemed willing to accept as not 'impermissibly suggestive.'"

It is demonstrable that the record before the District Court and this court in the present case furnishes no basis for a suggestion even that Mr. McGriff's reliance in part upon photographs in his identification of appellant was of an "immeasurable quantum" or within the compass of "trace residuals." Two sets of photographs were seen by Mr. McGriff. One set was composed of separate pictures of two lineups, each of which lineups the District Court found was so impermissibly suggestive as to violate due process of law. This finding is undisturbed. The other set of photographs was missing from police files and was not available to the District Court or to this court to view. Accordingly there is no basis whatsoever for a suggestion that those photographs were not impermissibly suggestive.