Samuel L. SHEFFIELD, Appellant,

v.

UNITED STATES, Appellee.

No. 12836.

District of Columbia Court of Appeals.

Argued Sept. 12, 1978.

Decided Feb. 1, 1979.

Andrew L. Lipps, Public Defender Service, Washington, D. C., for appellant.

John H. Korns, II, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Oscar Altshuler, Michael W. Farrell and Richard H. Saltsman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

NEWMAN, Chief Judge:

 Convicted by a jury of armed kidnapping, armed robbery, and extortion, appellant seeks reversal of his conviction, contending that the trial court erred: (1) in denying his motion to suppress certain pretrial photo identifications; and (2) in failing to *sua sponte* impose sanctions where the police failed to preserve photographic evidence. We affirm.[1]

On the evening of November 3, 1976, while Kirk King was leaving the house of his girlfriend, Tawana Sheffield, at 1252 10th Street, N.W., he saw three men standing beside the fence of the house next door. King walked up to the group and asked for a match, when suddenly one of the men placed a .45 caliber automatic pistol in his ribs. The three men, all of whom were unmasked, then took King to the house next to the Sheffield home. There they made King remove all of his clothes and sit on the floor. After rummaging through King's clothes and finding only twenty-nine cents and a cigarette, they ordered King to put his clothes back on and call someone to get some money.

The trio then took King to the Sheffield home.[2] One of the three men went to the basement where he picked up the telephone extension. Two of the men stood watch as King made several calls to obtain money. After a number of unsuccessful calls, the man in the basement returned and informed his compatriots that King "can't get no money." He then ordered King to call his father and returned to the basement to listen on the extension. King then telephoned his father and told him to send $100 to 11th and M Streets or he would not see him anymore. King was then taken to the house next door, where he was again ordered to remove his clothes.

Following the telephone conversation with his son, Frank King, Sr. gave $100 to James Pipkins to deliver to the men who had abducted his son. Pipkins asked Ronald Baker to accompany him. When Pipkins and Baker arrived at 11th and M Streets, Baker crossed the street and handed over the $100 to one of the abductors who was there waiting, while Pipkins remained on the far side of the street.

Meanwhile, Frank King, Sr. flagged down two police officers, Lewis C. Brickhead and Francis L. Hinton, and informed them of the telephone call and the abduction of his son. The officers immediately began looking for Kirk King and eventually found him at the King home between 9:30

1. Appellant raises two additional assignments of error which merit only brief discussion. Appellant contends that the trial court erred in refusing to dismiss the indictment on the ground that the government having secured his presence in the District of Columbia through a writ of habeas corpus *ad prosequendum*, failed to comply with the Interstate Agreement on Detainers Act (IAD), 18 U.S.C. App. at 1395–98 (1976), D.C.Code 1973, § 24–701. Appellant's contention is without merit since a writ of habeas corpus *ad prosequendum* issued by a federal court is not a detainer within the meaning of the IAD. *See United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *United States v. Palmer*, D.C.App., 393 A.2d 143 (1978). *Cf. Gale v. United States*, D.C.App., 391 A.2d 230 (1978).

Appellant further contends that reference at trial by the police officer to the photograph of appellant shown to the witnesses as "MPDC identification photos" constitutes reversible error. We find this contention to be without merit. *See United States v. Hallman*, 142 U.S. App.D.C. 93, 439 F.2d 603 (1971).

2. Tawana Sheffield and her child were present at the Sheffield home during the events that follow.

and 10:00 in the evening.[3] They drove to 1254 10th Street, the house next to the Sheffield home and recovered King's undergarments. King then gave the names of two of his abductors, Lawrence Brown and Claude Wade, to the police officers. He also picked their photographs from an array.

On the following day, Brickhead and Hinton brought another set of photographs to the King home seeking identification of the third man. As King was pointing to the picture of appellant in the array, Ronald Baker entered the room and also identified appellant as the man to whom he had given the $100. On February 8, 1977, King also identified appellant in a lineup.

At the suppression hearing Kirk King testified to his abduction by appellant and two other men and to his subsequent identification of appellant in the photo array and the lineup. Ronald Baker testified that he had handed the $100 over to appellant. He further testified that there were street lights in the area; that he had no difficulty seeing the man to whom he had delivered the money; and that the man was a person whom he had seen twice before in the area. Baker also testified as to his identification of appellant in the photo array, noting that he entered the room as Kirk King picked appellant's picture from the array. The trial court denied the motion to suppress, ruling as to Baker's photo identification that although Baker was, in fact, aware of King's prior photo identification of appellant, this occurred "without intention or any conduct on the part of the police officers." It is on this issue that appellant's contention in this court focuses.

Officers Brickhead and Hinton also testified at the suppression hearing. During cross-examination, appellant's trial counsel elicited from Officer Hinton that while the photographs brought to the suppression hearing were photographs of the same people shown to King and Baker, they were not the same photographs used at the photo identification. Appellant's trial counsel did not object to the use of such photographs at

the hearing, nor did he request that the trial court impose any sanctions for the failure of the officers to retain the actual group of photographs.

Appellant contends that the trial court's refusal to suppress Baker's pretrial photo identification and its failure to bar his in-court identification of appellant denied him due process under principles enunciated in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ In *Manson v. Brathwaite, supra,* the Supreme Court reviewed *Stovall* and its progeny and held that the admission of testimony "concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." 432 U.S. at 106, 97 S.Ct. at 2249. In so holding, the Court reaffirmed those prior decisions insofar as they established that unduly suggestive identifications which are unreliable violate principles of due process and therefore are inadmissible. The Court emphasized that where a pretrial identification procedure is challenged on due process grounds, reliability is to be the linchpin of analysis. *Id.,* at 114, 97 S.Ct. 2243. Thus, where the police or prosecution utilize an identification procedure which is inherently unreliable, an accused may challenge the use of such evidence by filing a timely motion to suppress.

■ However, the Court left undisturbed that fundamental principle which holds that pretrial identification or recognition of an accused by a witness in the absence of participation by the police or prosecution does not bring such identification within the ambit of the due process principles set

---

3. The entire robbery and abduction took approximately an hour and a half.

forth in *Manson v. Brathwaite, supra. See Cureton v. United States*, D.C.App., 386 A.2d 278, 287 (1978), and cases cited therein. Thus, absent an affirmative showing that a pretrial identification involved unlawful conduct on the part of state officials, the due process safeguards of *Manson v. Brathwaite, supra*, are not implicated and a challenge to a "spontaneous and mutual recognition by two witnesses of a third party in a setting not precipitated or arranged by law enforcement officials" may not be predicated on such a basis. *Hill v. United States*, D.C.App., 367 A.2d 110, 115 (1976).[4] Moreover, where an accused makes no allegation of police involvement, such chance or accidental pretrial confrontations have not barred on due process grounds a later in-court identification where no untainted identification preceded the challenged confrontation. *See Cureton v. United States, supra* at 287.

■ Having failed to demonstrate at the suppression hearing that the pretrial identification is constitutionally infirm, an accused is not without recourse. A defendant may challenge the admission of such testimony by raising a timely objection to its admissibility at trial on the ground that under the law of evidence testimony is so inherently weak or unreliable as to lack probative value. *Cf. Reavis v. United States*, D.C.App., 395 A.2d 75. Of course, where there is a failure to raise a timely objection to the introduction of such identification testimony, the trial court's decision will not be overturned on appeal unless it is found that the error served "to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, D.C.App., 362 A.2d 706, 709 (1976) (en banc).

■ In applying these principles to the case at bar, it is undisputed that Baker's identification of appellant in the photo array was not the product of improper police conduct. Thus, the doctrine of *Manson v. Brathwaite, supra*, is inapposite and appel-

lant's reliance thereon is misplaced. Accordingly, the motion was properly denied. *Hill v. United States, supra*. Moreover, at trial appellant made no objection to Baker's testimony concerning his prior identification of appellant in the photo array on the ground that under the law of evidence it was so weak as to be lacking in probative value. We conclude that the trial court did not err in failing to *sua sponte* rule that such evidence was not probative. *Reavis v. United States, supra; Watts v. United States, supra.*

Appellant further contends that the trial court erred in refusing to *sua sponte* suppress the photo identifications of appellant since the photographs shown to the witnesses, Baker and King, were not the same photographs used at the suppression hearing.

■ It is well settled that there is a duty on the part of the government "to preserve . . . all photographic arrays from which an identification has been made." *Cotton v. United States*, D.C.App., 388 A.2d 865, 869 (1978), quoting *Washington v. United States*, D.C.App., 377 A.2d 1348, 1351 (1977). *See generally* Super.Ct. Cr.R. 16(a)(1)(C); Metropolitan Police Department General Order Series 304, No. 7 (Procedures for Obtaining Pretrial Eyewitness Identification, 1971). Where there has been a breach of the preservation rule, the trial court has authority to impose a sanction or fashion other appropriate relief. *Cotton v. United States, supra* at 869. However, the imposition of sanctions is not automatic. "The type of sanction imposed . . . may vary with the degree of culpability found." *Id.* at 870. Where there has been deliberate destruction of discoverable evidence, imposing sanctions likely would be proper. On the other hand, where the loss of evidence is the result of no bad faith on the part of the government, the trial court may decline to apply sanctions. *See, e. g., Brown v. United States*, D.C.

---

4. We are cognizant that the admission in evidence of a pretrial identification (not involving governmental action) which is so unduly suggestive as to deprive that identification of pro-

bative value may give rise to constitutional concerns under the due process clause of the Fifth Amendment. However, this is not such a case.

**968**

App., 372 A.2d 557, 561 (1977). Thus, where defense counsel moves for production of evidence or requests the imposition of specific sanctions for breach of the preservation rule, the decision as to what sanctions should be imposed or whether to impose any sanctions at all are matters committed to the trial court's discretion. *See Cotton v. United States, supra* at 869; *Marshall v. United States,* D.C.App., 340 A.2d 805, 809–10 (1975).

▪ Where defense counsel fails to move for the production of evidence and does not request the imposition of sanctions against the government for failing to preserve discoverable material, the trial court's failure to *sua sponte* impose a sanction will only be reversed upon a finding of plain error. *See United States v. Scriber,* 163 U.S.App.D.C. 36, 43, 499 F.2d 1041, 1048 (1974). *See also Watts v. United States, supra.*

▪ In the case at bar, appellant's trial counsel, although fully aware that the photographs used at the suppression hearing were not the same photographs shown to the witness at the pretrial identification, made no request that the trial court impose any sanctions or undertake any corrective measures. We note that trial counsel vigorously cross-examined Officer Hinton concerning whether the photos at the suppression hearing were the same photos shown to the witnesses. We cannot say on the basis of these facts that the trial court committed plain error. *See Watts v. United States, supra.*

*Affirmed.*